# IN THE UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF ALABAMA
# NORTHEASTERN DIVISION

IN RE:

USA MOTOR EXPRESS, INC.,

    DEBTOR,                                               CASE NO.: CV-06-J-4875-NE

                                                                        (BANKRUPTCY COURT CASE
                                                                        NO.:05-85111-JAC)

_____

J & P TRUCKING, INC., et al.,

    PLAINTIFFS,

v.                                                                          A.P. NO. 05-80194-JAC

USA MOTOR EXPRESS, INC.,
et al.,

    DEFENDANTS.

## MEMORANDUM OPINION

Pending before the court is defendant LG Electronics USA, Inc.'s ("LG") motion for summary judgment (doc. 42), defendant LG's statement of facts (doc. 43), defendant LG's memorandum of law (doc. 44), and defendant LG's affidavit in support of its motion (doc. 45). Plaintiffs J & P Trucking Company, Inc. ("J & P") and Nussbaum Trucking, Inc. ("Nussbaum") filed a response and memorandum of law in support of their own motion for summary judgment (doc. 46), a counter-motion for summary judgment (doc. 47),[1] and affidavits and evidence in response to

---

[1] The plaintiffs' counter-motion for summary judgment (doc. 47) is untimely. Under the court's Scheduling Order, dispositive motions were due to be filed no later than September 14, 2007. As such, the court will deny the plaintiffs' counter-motion by separate order.

defendant LG's motion and in support of their own motion (docs. 48 and 49).[2] Thereafter, defendant LG filed an opposition to plaintiffs' counter-motion for summary judgment (doc. 52) and a reply to plaintiffs' response to defendant's motion for summary judgment (doc. 53). Plaintiffs filed a reply to defendant's response to plaintiffs' motion for summary judgment (doc. 54).

## FACTUAL BACKGROUND

This case began as an adversarial proceeding in the United States Bankruptcy Court for the Northern District of Alabama on November 21, 2005, when the plaintiffs filed a declaratory judgment action against USA Motor Express, Inc. ("USA"),[3] LG, and other parties previously dismissed while this matter was before

---

[2]Plaintiff Transport Depot, Inc., is not mentioned in the plaintiffs' pleadings in opposition to the motion for summary judgment, or in the plaintiffs' cross-motion for summary judgment. Defendant LG asserts that, upon information and belief, Transport Depot is no longer involved in this litigation. Defendant's motion (doc. 42), at 1. Transport Depot did not file any opposition or evidence to defendant LG's motion for summary judgment. As such, the court deems the claims of Transport Depot abandoned, and shall grant defendant LG's motion against this plaintiff by separate order.

[3]While USA is a named defendant here, this defendant filed bankruptcy. As such, any claim against it is properly brought in the bankruptcy court. Because the filing of the bankruptcy petition operates as a stay of these proceedings pursuant to 11 U.S.C. § 362(a)(1), the court shall dismiss the claims against defendant USA by separate order, without prejudice to the right of the plaintiffs to subsequently seek petition for reinstatement of this action in order to pursue any claim embraced herein not adjudicated in, or discharged by, the proceedings in the Bankruptcy Court.

the Bankruptcy Court.[4] A motion to withdraw the reference was filed December 15, 2006, which this court granted on January 3, 2007. The plaintiffs filed another amended complaint on April 2, 2007 (doc. 14), seeking declaratory relief pursuant to 28 U.S.C. § 2201.[5]

The plaintiffs are shipping companies who carried shipments for the bankrupt USA pursuant to transportation brokerage agreements. One entity for whom plaintiffs hauled goods pursuant to the brokerage agreements was defendant LG.

The Transportation Brokerage Contract (submitted as exhibit A to doc. 48, exhibit D to doc. 46), at ¶ 8, provides that the Broker (USA) will pay the Carrier (plaintiffs) for freight charges within the time specified after receiving from the Carrier a freight bill, bill of lading, and delivery receipt. In other words, LG contracted with USA to haul goods. In turn, USA hired the plaintiffs to actually haul these loads. Prior to USA filing bankruptcy, LG paid USA and USA paid the plaintiffs. The plaintiffs allege that until May 2005 USA performed as agreed under the terms of the agreement. Beginning in June 2005 and continuing until August 2005, many of plaintiff J&P's invoices went unpaid. *See* plaintiffs' memorandum at

---

[4]USA filed a Chapter 11 bankruptcy petition on September 26, 2005. On February 6, 2006, the proceeding was converted to a Chapter 7 case, and on February 3, 2006, defendant Tazewell T. Shepard was appointed to serve as trustee for the bankruptcy estate.

[5]Only Counts One and Two of that amended complaint remain pending. Count Three sought a declaration of rights for Transport Depot, which has abandoned its claims, and Court Four was brought against the trustee of the bankruptcy estate, which the court dismissed by Order dated May 9, 2007 (doc. 29).

¶ A.7. At some point, although LG paid USA amounts due for hauling freight, USA failed to pay the plaintiffs for these very loads. The parties do not dispute that the plaintiffs are owed money from USA for numerous loads where LG was the shipper of the goods carried. *See e.g.*, affidavit of J.A. Bates, ¶ 12; affidavit of Bill Wettstein,¶ 8. Plaintiff J&P asserts defendant LG continued to pay invoices to USA after J&P "terminated" USA as its agent for payment by letter dated September 23, 2005. Plaintiff's memorandum, ¶ 15.

Defendant LG asserts that it does not owe the plaintiffs for the shipments in question, having paid in accordance with the Motor Carrier Agreement it entered with USA. *See* Exhibit A to Farooq affidavit. Defendant LG tendered its freight to USA for shipment pursuant to the terms of that agreement. Farooq affidavit, ¶¶ 7, 9. LG informed plaintiff J&P that any subcontracting of loads tendered to USA was done without the knowledge of LG. *See* plaintiff's exhibit C, letter to J & P dated October 3, 2005.

The plaintiffs assert that defendant LG is responsible for charges for loads plaintiffs hauled that were never paid by USA. Plaintiffs' response (doc. 46), at 9. The plaintiffs further allege that, even though this may result in defendant LG double paying for transportation, this is more equitable than the plaintiffs not receiving payment.[6]

---

[6]The plaintiffs do not state whether they have filed claims for these amounts in the bankruptcy court. Assuming such claims have been filed, plaintiffs do not address what they would do should the

The plaintiffs assert that they did not contract with LG. Plaintiffs' response, at 11. They argue that because they had no agreement with LG, and were not a party to LG's contract with USA, they are not bound by the terms of that agreement, and therefore there is no written waiver of their rights to seek payment from LG. *Id.* However, the plaintiffs entered contracts with USA which gave USA "full power and authority to act in [plaintiffs'] behalf for the sole purpose of securing merchandise and accepting payment for transportation." Brokerage contract, ¶ 9. Furthermore, the contract states that the plaintiffs are independent contractors of USA, except that USA "shall be the agent for the [plaintiffs] for the collection of charges." *Id.*, ¶ 13.

## II. STANDARD OF REVIEW

Under Federal Rule of Civil Procedure 56(c), summary judgment is proper "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986). As the Supreme Court has explained the summary judgment standard:

> [T]he plain language of Rule 56(c) mandates the entry of summary judgment, after adequate time for discovery and upon motion, against a

---

bankruptcy court allow their claims, and they prevail in this litigation. In that set of circumstances, the plaintiffs could potentially recover twice for each bill they have not been paid.

> party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial. In such a situation, there can be no genuine issue as to any material fact, since a complete failure of proof concerning an essential element of the nonmoving party's case necessarily renders all other facts immaterial.

*Celotex Corp.,* 477 U.S. at 322-23. The party moving for summary judgment always bears the initial responsibility of informing the court of the basis for its motion and identifying those portions of the pleadings or filings which it believes demonstrates the absence of a genuine issue of material fact. *Id.* at 323. The burden then shifts to the nonmoving party to "go beyond the pleadings and by ... affidavits, or by the 'depositions, answers to interrogatories, and admissions on file' designate 'specific facts showing that there is a genuine issue for trial.'" *Celotex*, 477 U.S. at 324, Fed. R. Civ. Pro. 56(e). In meeting this burden the nonmoving party "must do more than simply show that there is some metaphysical doubt as to the material facts." *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986). That party must demonstrate that there is a "genuine issue for trial." Fed.R.Civ.Pro. 56(c); *Matsushita*, 475 U.S. at 587, *see also Anderson v. Liberty Lobby*, 477 U.S. 242, 249 (1986). The non-movant must "demonstrate that there is indeed a material issue of fact that precludes summary judgment." *Clark v. Coats & Clark, Inc.*, 929 F.2d 604, 608 (11th Cir.1991).

## III. LEGAL ANALYSIS

The facts before the court establish that defendant has paid for the transportation of its goods. The plaintiffs do not dispute this. Rather, the plaintiffs assert that the defendant should pay for this same transportation a second time because the transportation broker, USA, did not pay the plaintiffs.

The plaintiffs argue that pursuant to the bills of lading, defendant remained liable to plaintiffs for shipping charges, regardless of defendant's payments to USA. Such an assumption ignores the contracts entered between defendant and USA, and USA and plaintiffs. Pursuant to the contracts between the plaintiffs and USA, USA was a "broker" and the plaintiffs were each a "carrier." The relevant clauses state:

> 8. "Broker" agrees to pay "Carrier" for the applicable freight charges under this contract within fifteen (15) and not more than (21)[7] days of receipt by "broker" of Carrier's" (sic) freight bill, bill of lading and delivery receipt.... The bill of lading shall note that the shipment were (sic) transported by the "Carrier" acting as a carrier, and that the shipment was arranged by the "Broker (sic) as a broker.
>
> 9. "Carrier" hereby retains the services of "Broker" as its agent for the solicitation and dispatch of merchandise available for transportation by motor vehicle with full power and authority to

---

[7] In the copy provided to the court signed by J&P, the "15" is marked through and "21" is inserted underneath it. Similarly, although not marked out, the number "31" appears to be written below the "(21)" contained in this paragraph. In the contract entered by Nussbaum, these time limits are "30" and "35," respectively. Exhibits B and D, ¶ 8, plaintiffs' memorandum of law (doc. 46).

> act in "Carrier's" behalf for the sole purpose of securing merchandise and accepting payment for transportation. "Carrier" authorizes "Broker" to invoice shipper, receiver, consigner or consignee for freight charged as an agent for and on behalf of "Carrier" for non-payment of charges.
>
> 13. The relationship of the "Carrier" to the "Broker" shall, at all times be that of an independent contractor, except that the "Broker" shall be the agent for the "Carrier" for the collection of charges.

Exhibits B and D to plaintiffs' memorandum (doc. 46).

The agreement between LG and USA contains the following relevant terms and conditions:

> **5. CERTAIN OBLIGATIONS OF CARRIER**
> f. <u>Subcontracting</u>  It is understood that CARRIER may subcontract with pickup and delivery agents, motor carriers, air carriers and others for the performance of the transportation services to be provided under this Agreement.  However, CARRIER agrees that all obligations assumed under this Agreement shall apply to the same extent that they would if CARRIER performed the transportation directly.
>
> **10. INDEMNITY**
> a.  CARRIER shall at all times indemnify, defend and hold harmless SHIPPER, its agents and employees against and from any and all claims directly or indirectly arising out of or related to the services provided hereunder (including, without limitation, claims for personal injury, death and damage to property, clean up costs from commodity spills and damage to the environment) asserted against SHIPPER (i) by any agent or employee of CARRIER or (ii) by any other person.
> b. Payment of freight charges by SHIPPER to CARRIER shall be deemed payment to the carriers engaged by CARRIER, and upon payment by SHIPPER to CARRIER of such charges, CARRIER shall hold SHIPPER harmless against any and all claims, demands, and suits by carriers or others seeking undercharges, late payment penalties, duplicate payments or other charges from SHIPPER.

Exhibit F to plaintiff's memorandum.

The United States Supreme Court has made clear that shippers and carriers can contract to whom and by whom freight charges are to be paid, regardless of the presumptions which attach to a bill of lading. *See Louisville & Nashville R.R. v. Central Iron & Coal Co.,* 265 U.S. 59, 66, 44 S.Ct. 441, 68 L.Ed. 900 (1924); *Illinois Steel Co. v. Baltimore & Ohio R.R.,* 320 U.S. 508, 512, 64 S.Ct. 322, 88 L.Ed. 259 (1944). It is only where the parties fail to agree or where discriminatory practices are present that the default terms bind the parties. *See In re Roll Form Products, Inc.,* 662 F.2d 150, 154 (2d Cir.1981). In the face of other provisions, the liability allocation presumptions on the bill of lading are unnecessary. *See Fikse & Co. v. United States,* 23 Cl.Ct. 200, 204 (1991).

> [T]he shipper is presumably the consignor, the transportation ordered by him is presumably on his own behalf, and a promise by him to pay therefor is inferred (that is, implied in fact), as a promise to pay for goods is implied, when one orders them from a dealer. But this inference may be rebutted, as in the case of other contracts. It may be shown, by the bill of lading or otherwise, that the shipper of the goods was not acting on his own behalf; that this fact was known by the carrier; that the parties intended not only that the consignee should assume an obligation to pay the freight charges, but that the shipper should not assume any liability whatsoever therefor; or that he should assume only a secondary liability.

*Louisville & N.R. Co. v. Central Iron & Coal Co.,* 265 U.S. 59, 67-68, 44 S.Ct. 441, 443 (1924). The Court further instructed that "[t]o ascertain what contract was

entered into we look primarily to the bills of lading," and that "[o]rdinarily, the person from whom the goods are received for shipment assumes the obligation to pay the freight charges; and his obligation is ordinarily a primary one." *Louisville & Nashville R.R. Co.*, 265 U.S. at 67. Yet *Louisville & Nashville R.R. Co.,* as well as circuit courts in subsequent cases, have held that this pattern and presumption can be overcome by contractual provisions. *See Louisville & Nashville R.R. Co.*, 265 U.S. at 67-68, 44 S.Ct. 441; *A/S Dampskibsselskabet Torm v. Beaumont Oil Ltd.*, 927 F.2d 713, 716- 22 (2nd Cir.), cert. denied, 502 U.S. 862, 112 S.Ct. 183, 116 L.Ed.2d 144 (1991); *States Marine Int'l, Inc. v. Seattle-First Nat'l Bank*, 524 F.2d 245, 247-49 (9th Cir.1975); see also *Capitol Transp., Inc. v. United States*, 612 F.2d 1312, 1319-21 & n. 10 (1st Cir.1979) (holding that the bill of lading is not the only evidence as to the identity of the consignee).

The plaintiffs are correct that assuming no other contract existed, a consignor is liable for shipping charges unless the section 7 recourse provision of the bill of lading is executed. However the consignor here, LG, tendered its shipment to a carrier, USA, and agreed to pay freight charges to USA, pursuant to a contract between those two parties. The evidence before the court is LG had no knowledge of USA further consigning the load to another carrier for actual shipment, pursuant

to a wholly separate contract.[8]

Although plaintiffs want to use their lack of contract directly with LG as a shield, to do so would be to ignore the obvious intentions of the parties, which this court may not do.  The court must give the contract between USA and plaintiffs full weight, as well as the contract between LG and USA.  These two separate contracts clearly reflect the intentions of the parties.  "When a court construes a contract, 'the clear and plain meaning of the terms of the contract are to be given effect, and the parties are presumed to have intended what the terms clearly state.'" *Title Max of Birmingham, Inc. v. Edwards,* 2007 WL 1454456, *3 (Ala. 2007), citing *H & S Homes, L.L.C. v. Shaner,* 940 So.2d 981, 988 (Ala.2006) (other citations omitted).  General contract law requires a court to enforce, as it is written, an unambiguous and lawful contract.  *Drummond Co., Inc. v. Walter Industries, Inc.* 962 So.2d 753, 780 (Ala.2006), citing *Ex parte University of South Alabama*, 812 So.2d 341 (Ala.2001).  A document is unambiguous only if one reasonable meaning emerges from a reading of the document.  *Wayne J. Griffin Elec., Inc. v. Dunn Constr. Co.,* 622 So.2d 314 (Ala.1993).

To determine whether the writing constitutes the final expression of the parties

---

[8]Even if the court was to resort to the bills of lading, each of those submitted to the court identify LG as the shipper and USA as the carrier.  *See* exhibit 1 to defendant's reply (doc. 53).

as to their obligations under a valid contract, multiple factors should be considered, such as trade usage, course of dealing, and course of performance. *See, e.g., Nanakuli Paving & Rock Co. v. Shell Oil Co., Inc.,* 664 F.2d 772, 796-97 (9th Cir.1981). Trade usage is "relevant to show that the expectation of the parties that a given usage would be observed was justified." *Nanakuli Paving & Rock Co.,* 664 F.2d at 785. The words of an agreement are to be given their ordinary meaning, and the intention of the parties is to be derived from the provisions of the contract. *Smith v. Citicorp Person-to-Person Financial Centers, Inc.,* 477 So.2d 308 (Ala.1985). When the provisions are certain and clear, it is the duty of the trial court to analyze and determine the meaning of the provisions. *Pate v. Merchants National Bank of Mobile,* 428 So.2d 37 (Ala.1983).

The contracts before this court are unambiguous and clearly state the intentions of the parties. Plaintiffs were well aware that USA was subcontracting its loads to them. The plaintiffs knew they contracted with USA to obtain loads to carry and in return, they were to be paid for hauling these loads by USA, regardless of from where the loads originated, and regardless of whether USA had been paid by the shipper for those loads. Similarly, LG's contract with USA clearly states the intention of the parties that LG would tender payment to USA directly for loads tendered to USA for shipment, regardless of whether USA actually hauled that load. To allow plaintiffs

to proceed directly against LG renders not one, but two contracts meaningless.

The plaintiffs do not address the enforceability of the two contracts. They do not argue that those contracts were unenforceable, unconscionable, void, against public policy, or the product of fraud. Rather, the plaintiffs simply assert that the contracts should not be binding. While the court sympathizes with the plaintiffs due to the lack of payment, the plaintiffs are bound by the contracts they willingly and knowingly entered. Those terms state that the plaintiffs retained USA "as [their] agent for the solicitation and dispatch of merchandise available for transportation by motor vehicle with full power and authority to act in Carrier's behalf for the sole purpose of securing merchandise and accepting payment for transportation."[9] Exhibits B and D to plaintiffs' memorandum (doc. 46), ¶ 8. They further agreed that for the purpose of collecting amounts due for shipping, USA was the agent for the plaintiffs. *Id.*, ¶ 13. Defendant tendered payment to USA, as the plaintiffs' agent for

---

[9] The plaintiffs' assert that J&P terminated this agency by letter to USA. Exhibit B to plaintiffs' memorandum. Although the plaintiffs assert that defendant continued to pay LG for outstanding invoices after this date, the plaintiffs submitted no evidence in support of this assertion. Rather, the responses to the requests for production, submitted as exhibit G to plaintiffs' memorandum, states "See document entitled OPEN USAM LGE, attached hereto." No such attachment was provided to the court.

Although perhaps unintended by the plaintiffs, the court finds that to in fact terminate the agency relationship as of September 23, 2005, the letter from J&P purporting to do so is evidence that prior to that date, USA was J&P's agent for the purpose of collecting payment for shipments.

this purpose, pursuant to defendant's contract with USA, which stated that such payment "shall be deemed payment to the carriers engaged by CARRIER, and upon payment by SHIPPER to CARRIER of such charges, CARRIER shall hold SHIPPER harmless against any and all claims, demands, and suits by carriers or others seeking undercharges, late payment penalties, duplicate payments or other charges from SHIPPER." Exhibit F to plaintiff's memorandum, ¶ 10.

The plaintiffs have been wronged, for they upheld their end of the contracts they entered with USA.  However, defendant LG is not the cause of the plaintiffs' misfortune.  Any right of action the plaintiffs have is properly against USA, whether in bankruptcy proceedings or not.  The court cannot rewrite the parties' contracts because unforseeable later events caused the plaintiffs to suffer a loss from these contracts.

Having considered the foregoing, and being of the opinion that the defendant's motion for summary judgment is due to be granted on all counts of the plaintiffs' amended complaint, the court shall so rule by separate Order.

**DONE** this 17th day of October, 2007.

_____
INGE PRYTZ JOHNSON
U.S. DISTRICT JUDGE